SANTA MINTO v. THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK. (a)

Under the act, "In relation to the police department of the city of New York," passed April 11, 1853, a policeman has a right to his salary while absent from duty in consequence of disease contracted in the public service.

There is no discretionary power in the mayor to grant or refuse such pay.

The regulation of the police department, requiring application for "sick pay" to be accompanied by an affidavit of the policeman and a certificate of the captain and physician as to the character and cause of the disease, is inconsistent with the statute and void.

And where it appeared that the plaintiff, a member of the police department, who had been absent from duty in consequence of sickness, had been previously, while on duty, exposed to severe weather and had been found sick while on his

---

(a) The reporter is indebted, mainly, to Mr. ABRAHAM R. LAWRENCE, Jr., for the statement of this case.

post; it was *held*, that the evidence was sufficient to sustain the jury in finding that such sickness was incurred in the discharge of the plaintiff's duty, and that an action might be maintained for the portion of his salary accruing during such absence.

THIS case came up upon an appeal by the defendants, from a judgment rendered in the Fifth District Court, in favor of the plaintiff, for his salary as a policeman for a period during which he was detained from duty by sickness.

On the trial, the captain of the patrol district to which the plaintiff was attached, testified, that he saw the plaintiff on his post in Broome street in the early part of February, 1854; that he spoke to him, and that the plaintiff did not appear to hear, but seemed languid, weak, and unable to move "as he ought to do." Another witness testified, that in January preceding, the plaintiff had been exposed while upon official duty at a fire, and that he thought the plaintiff's disease arose from such exposure.

One of the physicians of the police department testified, that the plaintiff was reported sick, and that he had called at the plaintiff's house twice, and was told that the plaintiff was not at home, but that he finally saw him about the 1st of March, 1854, and that he found the plaintiff's disease to be a chronic affection of the throat.

Three physicians were examined on the part of the plaintiff, who testified, that the plaintiff's affection was quinsy, and one of them, the family physician of the plaintiff, testified that the plaintiff had no chronic disease.

The defendants objected to the jurisdiction of the court, on the ground that the mayor of the city had the sole power to grant or refuse applications for "sick pay" under the acts of the legislature constituting the police department.

It appeared that there was a general order of the department making it incumbent upon every member of the police department claiming pay, when absent in consequence of sickness contracted in the public service, to make an affidavit setting forth the date when he was taken sick, the duration of such sickness, and that the same was consequent upon the faithful discharge

of a policeman's duty; also a certificate from the captain of his district and physician of the department, stating cause of absence, nature of disease, and other particulars.

*Abraham R. Lawrence,* Jr., for the defendants.

*Charles K. Smith,* for the plaintiff.

By THE COURT. INGRAHAM, FIRST J.—This action is brought to recover pay claimed by the plaintiff for salary as a policeman, while he was confined by sickness from duty.

All the points presented by the defendants' counsel may be embraced under two heads:

1st. As to the construction to be given to the act of 1853, and its effects upon previous statutory provisions relating to the police of the city of New York.

2d. As to the sufficiency of the evidence to sustain the finding of the jury.

By the act of 1849 (Laws of 1849, p. 610), it is provided that no compensation shall be allowed to a policeman for any period which he may be absent from duty, " except by the mayor, in cases in which he shall be satisfied that the absence was consequent upon disease or injury contracted in the public service."

The whole power of allowing what is termed " sick pay " was, by this statute, vested in the mayor. He alone had the right to pass upon the sufficiency of the cause of absence and whether it had been produced by disease or injury contracted in the public service; and from his decision there was no appeal.

In 1853, a new act was passed in relation to the police department (Sess. Laws of 1853, p. 440), in which all the provisions of the act of 1849 are incorporated, either as they existed in that act or as modified and amended in the latter act, but no section of the act of 1849 is left unincorporated in the act of 1853.

The 1st section of the act of 1849 is incorporated into the act of 1853 at section 8, but amended so as to allow the mayor to relieve policemen and others for any period they may be absent

from duty without permission, except when absent from disease contracted in the public service, and the same section then provides, that in all such cases they shall receive their full pay.

It is urged on the part of the defendants, that the alterations of this section do not deprive the mayor of the power he possessed under the act of 1849 of deciding upon the claims for pay in cases of sickness. I cannot, however, adopt that conclusion. If no previous statute had existed on the subject, the section would be easily understood and free from ambiguity.

It gives the mayor power to excuse the members of the department for all absence from duty, except in one instance, viz. where such absence is caused by disease contracted in the public service.

There can be no doubt that the construction which should be given to such a section is, that in the case of the exception no discretionary power was vested in the mayor, that the intent of the legislature was not to give any power of interfering with the claims of the policemen in such a case. Having so excluded from the discretionary power of the head of the department any control over the pay of the men in case of sickness arising from such cause, the statute then expressly provides for the case, by directing that in all such cases the policeman shall receive full pay.

No words could more plainly express the intent of the legislature to be that the members of the police department, when sick from disease contracted in the public service, shall receive full pay, and that the mayor shall not, in such cases, have any discretion to allow or refuse it.

If this be so, then there is no reason for saying that the first section of the act of 1849 is not repealed. It is plainly inconsistent with the act of 1853, and by that act is repealed, and the intent to repeal it cannot be a matter of doubt when we find the whole section, with amendments, incorporated into the new act.

But it is said that the policemen were bound by the rules and regulations of the department, and that the general order of 3d March, 1851, relative to such applications for pay, which re-

quired such applications to be accompanied by an affidavit of the policeman, with a certificate of the captain and physician, should have been complied with.

It must be observed that these provisions were made in reference to the law of 1849, and before the passage of the present statute. In some of their requirements, they are plainly inconsistent with the act of 1853, and so far, at any rate, would be void.

The statute nowhere makes the certificate of the captain or physician necessary to entitle the policeman to his salary, but on the contrary, directs he shall be entitled to it in all the cases. There could not be a rule made requiring as a condition of payment a certificate from a person in the public employ, when the statute directed that the payment should be made in all cases without exception.

The evidence shows that such an application was made, but in what form does not distinctly appear. No objection was made on the score of insufficiency, and the want of the certificate of the physician, if such certificate was not in reality granted, would not work a forfeiture of the pay. I do not mean to be understood as saying that the department may not provide a rule by which the fact may be ascertained whether the policeman was entitled to be paid for such absence, by requiring him to swear to the cause of absence and that the sickness was contracted in the public service, or in some other way which would not interfere with the provisions of the statute, which directs that in all such cases he shall receive pay. But they cannot by any regulation place either in the mayor or physician a discretionary power to grant or refuse such pay by making it dependent upon a certificate to be given by either of those officers.

It may be that the good government of the police and the efficiency of the service may require that such discretionary power should be placed in some officer, but I cannot resist the conclusion that the amended act was intended to prevent that exercise of discretion by the mayor, and whether wisely intended or not, it is our duty to enforce it as enacted.

The other question in this case is, whether the evidence is

sufficient to sustain the finding of the jury that the disease of the plaintiff was contracted in the public service. The complaint was quinsy. The plaintiff was on duty with the disease upon him until sent home by a lieutenant of police. The physician who attended states that he was too unwell to do duty, and that policemen would be liable to such diseases from their exposure.

There was evidence of the physician of the department that he thought the disease a chronic affection, but this was contradicted by the family physician of the plaintiff, who had known him for six years. Whether or not the cause was disease contracted in the public service was a question of fact for the jury. There was evidence enough to let that question pass to them for their decision, and with their finding on the point we cannot interfere.

The right of the plaintiff to sue for his salary is undoubted, if the defendants refuse to pay it. The claim in this case is for a portion of that salary which is unpaid, and from the views above expressed in reference to the statute, it will be apparent that the same right to sue for this portion of the salary exists as for any other.

My conclusions are:

That in all cases the policeman has a right to his salary while absent from duty in consequence of disease contracted in the public service.

That there is no discretionary power in the mayor to grant or refuse such pay.

That the regulation of the department which requires a certificate from the physician appointed by the department, is inconsistent with the statute, and therefore void.

That the evidence submitted to the jury upon the question as to the cause of the plaintiff's disease was sufficient to sustain their finding in his favor, and that an action may be maintained for such portion of his salary as well as in any other case of nonpayment of salary after it is due.

The judgment below should be affirmed.

Judgment affirmed.